# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

The Estate of Mikinah Smith, et al.,

        Plaintiffs,

    v.

Hamilton County Department of Job
and Family Services, et al.,

        Defendants.

Case No.  1:06cv362

Judge Michael R. Barrett

## ORDER

This matter is before the Court pursuant to the Motion to Dismiss of Defendant Suzanne Burke (Doc. 27 and 39[1]) and the Motion for Judgment on the Pleadings of Defendant Hamilton County, Hamilton County Department of Job and Family Services ("HCJFS"), Rick Roberts, Judy Harrison and Laticia Ivey (Doc. 30 and 40[2]).  Plaintiff responded to the pending motion to dismiss (Doc. 31) and motion for judgment on the pleadings (Doc. 43 and 44).The Defendants filed reply briefs (Doc. 33, 45 and 46).

I.      Introduction and Facts

This is a Civil Rights action for damages arising out of the death of Mikinah Smith, an infant who was beaten to death while in a HCJFS-placed foster home. The complaint bases jurisdiction on Federal Question, 28 U.S.C. § 1331, and Civil Rights, 28 U.S.C. § 1334. The matter in controversy exceeds $75,000.

---

[1]In response to the Second Amended Complaint Defendant Burke file a motion to incorporate her Motion to Dismiss the First Amended Complaint to the Second Amended Complaint.

[2]The County Defendants also filed a motion to incorporate their prior motion to the Second Amended Complaint.

Michael Smith, III and Mikinah Smith, twin siblings, were born on March 17, 2002 to Sakinah I. Thomas and Michael Smith. (Doc. 38, ¶9-11).  Soon after their birth, the twins were taken into the custody of the HCJFS which then placed them in temporary foster care with Robin-Reed White and Norman White[3]. (Id. at ¶19).  During this time their biological mother, Sakinah I. Thomas, was allowed supervised visitation. (Id. at ¶20).

During a visit, Ms. Thomas noticed bruising on both Mikinah and Michael. (Id.) She complained of these injuries to her case worker, Laticia Ivey. (Id. at ¶21).  Despite the abuse allegations, no action was taken. (Id. at ¶22-24, 29).  On March 15, 2003, Mikinah was beaten so severely that she died three days later, one day after her first birthday. Norman White has since been charged with her murder and felonious assault. (Id. at ¶ 25-26, 30).  Sakinah I. Thomas came to learn about these injuries while Mikinah was in the hospital.  She also became aware that her son had also suffered injuries. (Id. at ¶28).

Plaintiffs allege several things. First, they allege that the conduct of Defendants deprived plaintiffs of their civil rights, including their due process rights not to suffer punishment and deprivation of life and liberty without due process of law.  Plaintiffs further allege that the Defendants' conduct was the result of policies, practices and customs to not properly report child abuse, to not properly investigate allegations of abuse and to not properly monitor and investigate foster parents.

Plaintiffs' second claim involves the standard of care used by the HCJFS. Plaintiffs allege that the level of care used by HCJFS fell below the reasonable standard which

_____

[3]Robin-Reed White and Norman White have not filed an answer in this matter. Each executed a Waiver of Service of Summons (Doc. 3 and 4).  Plaintiffs have not moved for default judgment against them.  Any reference to Defendants in this Order excludes the White defendants.

should be performed by a health care provider, social worker, or medic. Plaintiffs allege that because HCJFS did not use the appropriate standard of care, they failed to sufficiently monitor the White's and failed to acknowledge a situation capable of foreseeable injury. Plaintiffs claim as result of this deficiency in care, they were caused to suffer pain and suffering, mental anguish, and death. Plaintiffs' parents, Sakinah I. Thomas and Michael Smith, now have bills and have incurred a loss of enjoyment of life and society with their daughter, Mikinah Smith.

The third claim alleges that the actions and omissions of the Defendants, particularly the Whites', constitutes negligence and a substantial departure from their respective professional duties. The fourth claim alleges that HCJFS is vicariously liable for the actions of those who were their employees or agents.  The fifth claim alleges that Mr. White's behavior constituted assault and battery and/or negligence without justification.  The sixth claim is for money damages for the bills incurred by Mikinah's death. These include expenses for medical bills, burial and other costs due to the actions and omissions of the Defendants. The final claim demands punitive damages as punishment for the Defendants.

II.     Procedural Background

This matter was originally filed on March 15, 2004.  That case was pending before Judge Weber.  It was dismissed without prejudice by Plaintiffs on July 15, 2005 as to some Defendants and on October 7, 2005 as to the remaining Defendants.  Plaintiffs re-filed their complaint on June 13, 2006.  As of the filing of the first amended complaint in this case on January 11, 2007 (Doc. 26), Defendants John Dowlin, Phil Heimlich, and Todd Portune had been dismissed, Suzanne Burke had been re-categorized as an individual and former Director of the Hamilton County Department of Job and Family Services, and Rick Roberts

3

had been added in his official capacity.  A second amended complaint was filed on March

7, 2007 (Doc. 38).  The second amended complaint was filed to correct the name of the

administratrix of the Estate of Makinah Smith from her mother Sakinah Thomas to her

grandmother Helen Zander.

III.     Arguments.

County Defendants argue that because Sakinah I. Thomas is neither the proper

administrator for Mikinah's estate, nor does she have parental rights over Michael Smith,

the Plaintiffs have no legal standing to bring this action. They then argue that because the

statute of limitations on a wrongful death claim is two years, that even though Plaintiffs

amended the complaint to name the appropriate administrator, the statute of limitations ran

and the claim is now barred. This same argument is made as to Rick Roberts.  Defendants

argue that because Roberts was added more than two years after the abuse occurred, he

is entitled to judgment in his favor.  Defendants also argue that even if the court finds that

Plaintiffs did state a sufficient claim, Defendants Ivey and Harrison should still be dismissed

on the basis of qualified immunity.  Furthermore, because Defendants were acting in their

official capacities, they argue that they are not liable for state law claims, nor are Plaintiffs

entitled to punitive damages.

Defendant Burke argues that because Plaintiffs do not allege acts specifically

attributable to her, nor do they allege that she had any knowledge of the abuse, the

Plaintiffs did not adequately state a claim and as a result, Defendant Burke is entitled to

dismissal of the claim against her.  She also argues that because she was acting, as

Plaintiffs have acknowledged, within her official capacity as then director of HCJFS, she

is entitled to dismissal based upon qualified immunity.  The other Defendants also

incorporate Burke's argument into their motion by reference.

Plaintiffs respond by arguing that the second amended complaint corrects the administrative mistake, thus naming the grandmother, Helen Zander, the executrix of Mikinah's estate.  They also contend, relying on both the Ohio Savings statute § 2305.19 as well as Fed. R. Civ. P. 15(c), that the pleading relates back to the original filing date and therefore, is not barred by the statute of limitations.  Plaintiffs then argue that because Rick Roberts was added as a substitute for Defendant Burke's position, pursuant to Fed. R. Civ. P. 21, he is not time barred. Similarly as to Burke's motion to dismiss, Plaintiffs argue that because the second amended complaint alleges that each of the individual Defendants supervised, authorized, and ratified the wrongful acts of the other individual Defendants, they have adequately stated a claim of recklessness against Defendant Burke. They also argue that because Burke's behavior was reckless, she is not eligible for qualified immunity under the exceptions listed under O.R.C. § 2744. They further argue that before dismissal can occur, discovery should be permitted so that the liability of each defendant can be determined.  Finally, they argue that until discovery occurs, punitive damages cannot be dismissed.

IV.    Legal Analysis

The standard for a motion for judgment on the pleadings brought under Fed. R. Civ. P. 12 (c) is the same legal standard applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Thus, both pending motions will be addressed together under the same legal standard.  A motion to dismiss pursuant to Rule 12 (b)(6) operates to test the sufficiency of the complaint.  The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true.  *See*

*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998).  A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations.  *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974).  A complaint must contain either direct or reasonable inferential allegations that support all material elements necessary to sustain a recovery under some viable legal theory.  *Lewis v. ACB*, 135 F.3d at 405 (internal citations omitted).  As the Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, (May 21, 2007)[4], a complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965.  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.

---

[4]The Sixth Circuit has not directly applied the *Twombly* motion to dismiss standard yet.  However, in a footnote in a recent case, it indicates that *Twombly* did not heighten the standard.  The Court stated: "Moreover, although this case does not present the question of if, or exactly how, *Twombly* has changed the pleading requirements of Federal Rule of Civil Procedure 8(a), we note that in *Erickson v. Pardus*, U.S. , 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), decided after *Twombly*, the Supreme Court reaffirmed that Rule 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 2200 (internal quotation marks omitted) ... In any event, for the reasons described infra, we conclude that the Lindsays have pleaded sufficient facts giving rise to a "reasonably founded hope that the discovery process will reveal relevant evidence" to support their claims. *Twombly*, 127 S. Ct. at 1967, 127 S. Ct. at 1967 (internal quotation marks omitted)." *Lindsay v. Yates,* 2007 U.S. App. LEXIS 19338, 12-13 n.6 (6th Cir. 2007).

A.      Statute of Limitations

Defendants argue that even though Plaintiffs were allowed to amend the complaint so that Helen Zander appears as the representative of the estate, the claim is still barred by the two year statute of limitations for a wrongful death claim. They argue that no appropriate representative of the estate has brought suit within two years of the decedent's death.  They further argue that since Plaintiffs did not name an appropriate representative for the children until after the statute of limitations had passed that the Plaintiffs misrepresented the capacity of the parties bringing the action.  Defendants then conclude that as a result of this misrepresentation, the Plaintiffs' action is not saved by the Ohio Savings Statute, R.C. 2305.19.  Defendants also argue that since Sakinah I. Thomas has had her parental rights terminated, as of September 1, 2004, she cannot be the representative for Michael.  Plaintiffs argue that this issue should be decided according to the Ohio Savings Statute, section 2305.19. This part of the statute states:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant.

Plaintiffs also assert support for their position using Federal Rules 15 (c) and 17 (a). Fed. R. Civ. P. 15 (c) explains:

> An amendment of a pleading relates back to the date of the original pleading when... (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or

occurrence set forth or attempted to be set forth in the original pleading, or (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 17(a) concludes:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action has been commenced in the name of the real party in interest.

In conjunction with Fed. R. Civ. P. 17(c), plaintiffs argue that these federal rules justify both the changing of the executrix of Mikinah's estate without penalty as well as the changing of Michael's representative. They claim, "the solution is not to 'throw out the baby', but to appoint a guardian ad litem." (Doc. 44)

First, as Plaintiffs correctly argue, pursuant to FRCP 17(a), it is not the administrator of the estate that is important to the case. The real parties in interest are the Estate of Mikinah Smith and Michael Smith, the children who were abused at the hands of their foster parents. Therefore, those parties never changed. Plaintiffs argue that because the only identity at issue was that of a legal technicality, the estate administrator, the second amended complaint should relate back to the original complaint and therefore, should fall within the statute of limitations.  The Court agrees.  The Defendants had fair and sufficient

notice of the claims and the changing of the representative does not change the

allegations. Therefore, Plaintiffs' second amended complaint should relate back to the

original filing date, thus falling within the statute of limitations.

As to the Defendants' argument that Sakinah I. Thomas can not be the

representative for Michael because her parental rights were terminated as of September

1, 2004, the Court agrees that a parent who had his or her parental rights terminated would

not be in a position to be a representative of the child.  However, at this stage of litigation

the Court must deem the facts in the light most favorable to the Plaintiffs and the facts set

forth in the complaint assert that Sakinah I. Thomas is the mother of the children with no

reference to any parental right termination.  If, in fact, Plaintiffs acknowledge or Defendants,

at the proper time, provide sufficient evidence of the parental right termination, the Court

will then order that a guardian ad litem be appointed as Michael's representative.

> B.    Rick Roberts

Aside from their overall argument that the second amended complaint is barred by

the statute of limitations, defendants argue that the naming of Rick Roberts to the suit is

also time barred.  Plaintiffs justify their position by citing Fed. R. Civ. P. 21. Although they

cite to the wrong rule, their argument remains the same. Rule 25(d) states,

> (1) When a public officer is a party to an action in an official
> capacity and during its pendency dies, resigns, or otherwise
> ceases to hold office, the action does not abate and the
> officer's successor is automatically substituted as a party.
> Proceedings following the substitution shall be in the name of
> the substituted party, but any misnomer not affecting the
> substantial rights of the parties shall be disregarded. An order
> of substitution may be entered at any time, but the omission to
> enter such an order shall not affect the substitution.

Defendants claim that this is inapplicable law. They argue that the Plaintiffs knew that Defendant Burke was not the director of HCJFS at the time the original complaint was filed.  However, the rule specifically states that the omission to enter the substitution will not affect the Plaintiff's ability to do so.  Due to the standard which construes the facts in the light most favorable to the Plaintiffs, as well as the language of Fed. R. Civ. P. 25(d), the addition of Defendant Roberts is not time-barred.

C.     Qualified Immunity

Both Defendant Burke as well as Defendants Harrison and Ivey raise the issue of qualified immunity.  While a defendant bears the burden of pleading the defense of qualified immunity, the ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity.  *Miller v. Administrative Office of Courts*, 448 F.3d 887, 894 (6th Cir. 2006), *citing Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

Qualified immunity will generally shield government officials from individual liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), *citing*, *Procunier v. Navarette*, 434 U.S. 555, 565 (1978).  The Supreme Court has typically employed a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005) (*citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).  However, the Sixth Circuit occasionally performs a third step in the qualified immunity analysis: "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established

constitutional rights." *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003).  *See also Estate of Carter,* 408 F.3d at 311 n.2 ("[B]oth the two-step approach and the three-step approach can be said to capture the holding of [*Saucier*].").

The Supreme Court since *Saucier* has continued to use the two-step approach to qualified immunity, but the Sixth Circuit has noted that "the three-step approach may in some cases increase the clarity of the proper analysis." *See Estate of Carter*, 408 F.3d at 311 n.2. If, on the other hand, the case at issue "is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable," then this court has "collapse[d] the second and third prongs" in an effort to "avoid duplicative analysis." *Caudill v. Hollan*, 431 F.3d 900, 911 n.10 (6th Cir. 2005).  The test is an objective standard, and the defendant's subjective intent is irrelevant. *Blake v. Wright*, 179 F.3d 1003, 1008 (6th Cir. 1999).  "Qualified immunity has been equated with subjective recklessness, and requires the § 1983 plaintiff to show that the state official knows of and disregards an excessive risk to [the victim's] health or safety." *Estate of Sowards v. City of Trenton*, 125 Fed. Appx. 31, 39 (6th Cir. 2005).

To prevail on a claim under § 1983, a plaintiff must prove: (1) a person, (2) acting under color of state law, (3) deprived him of a federal right. *Tanner v. County of Lenawee*, 452 F.3d 472, 477-78 (6th Cir. 2006).  Plaintiffs claim that the Defendants violated Mikinah's and Michael's due process rights not to be deprived of life and liberty because they failed to remove the twins from an abusive foster home after being informed that the children had bruises and failed to take appropriate steps to ensure the safety of the twins. The Sixth Circuit in *Meador v. Cabinet for Human Resources,* 902 F. 2d 474, 475 (6th Cir. 1990), extended a substantive due process right to children in foster homes. The court said

that children should be free from the "infliction of unnecessary harm" under the deliberate indifference standard. 902 F. 2d at 476. This standard was followed in *Lintz v. Skipski*, 25 F.3d 304 (6th Cir. 1994).  "It goes without saying that an individual's 'interest in preserving her life is one of constitutional dimension.'" *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1063 (6th Cir. 1998)(*quoting Nishiyama v. Dickson County*, 814 F.2d 277, 280 (6th Cir. 1987) (en banc)).

Defendants rely on *DeShaney v. Winnebago County Dept. Of Social Services,* 489 U.S. 189 (1989) to support their argument that the due process clause does not protect against injury by third parties and that there are only limited circumstances in which substantive due process liability will result.  (Doc. 27, p9-10).  However, this reliance is misplaced.[5]  As the court in *Meador v. Cabinet for Human Resources*, 902 F.2d 474, 476 (6th Cir. 1990) explained when finding that *DeShaney* clearly did not apply:

> DeShaney explicitly reserved the question of whether a child abused in a foster home would have a section 1983 claim: Had the state by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise to an affirmative duty to protect. Indeed, several Courts of Appeals have held . . . that the State may be liable under the Due Process Clause for failing to protect children in foster homes from mistreatment at the hands of their foster parents. *Deshaney,* 109 S. Ct. at 1006 n. 9.

Burke (and the other individual Defendants through incorporation) then argues that *Barrett v. Outlet Broadcasting, Inc.*, 22 F. Supp. 2d 726 (S.D. Ohio 1997) sets forth strict

_____

[5]Interestingly, Defendant Burke clearly points out, at page 11, that the Sixth Circuit in *Meador* found that *DeShaney* did not apply in a foster home case setting.

requirements for a § 1983 liability claim and that *Barrett* requires proof that the defendant

"'encouraged the specific incidents of misconduct or in some other way directly participated

in it.'" Burke argues that there are no specific allegations in the second amended complaint

which would demonstrate liability on her part.

However, the Court finds that Plaintiffs have sufficiently alleged enough facts to

establish deliberate indifference on behalf of each defendant.  Plaintiffs clearly allege that

"Plaintiffs' Constitutional due process rights to be protected by the State from harm have

been violated by the grossly negligent, wanton and reckless conduct of Defendants in

failing to adhere to sufficient procedures necessary to implement proper reporting of child

abuse by a Foster Parent(s) employed and/or selected by the HCJFS, failure to properly

investigate and monitor activities of said Foster Parent(s) and failure to timely take action

with [sic] alerted to the abuse of Plaintiff decedent, Mikinah Smith. ... Further, this incident

reflects Defendants' failure to properly train and supervise their agencies in the reporting

and investigation of injuries to children placed in their Foster Care" (Doc. 38, ¶2).  The

second amended complaint goes on to state, "Despite concerns and complaints set forth

by the twins' biological mother, Defendants, jointly and severally, failed to take any action

necessary to fulfill their duty to investigate both the injuries as well as the environment

provided by the certified foster care parents, Defendants Robin Reed-White and Norman

White, whom HCJFS chose as foster parents."  (Id., ¶24).  See also Doc. 38, ¶¶32-34.

Thus, at this stage of the litigation, taking the allegations of the complaint as true, a

constitutional right was violated.

The Court must next determine if the constitutional right is so clearly established

13

that the official is aware that he or she is violating it.  To be clearly established at the time of the conduct in question, the constitutional right must have been recognized by the U.S. Supreme Court, the United States Court of Appeals for the Sixth Circuit, this Court or other courts within the Sixth Circuit, or, in some cases, courts of other circuits. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996). "The contours of the right must be sufficiently clear that a reasonable person would understand that what he is doing violates that right." *Sheets*, 97 F.3d at 166.  Cases such as *Lintz v. Skipski,* 25 F.3d 304 (6th Cir. 1994), and *Meador v. Cabinet for Human Resources,* 902 F. 2d 474, 475 (6th Cir. 1990)*,* establish that the constitutional right was, in fact, clearly established.

As set forth above, the Sixth Circuit has, at times, applied a third step.  However, this Court declines to analyze this third step since the conduct at issue is objectively unreasonable based upon the clearly established right of foster children to be free from the "infliction of unnecessary harm."  Therefore, the individual defendants are not entitled to qualified immunity at this stage of the litigation.

### D.    Hamilton County

In addition to arguing that the Plaintiffs have not stated a claim against the Defendants collectively, Defendants also claim that Plaintiffs have not specifically stated a claim against the County and therefore there is no respondeat superior liability. Defendants argue that in order for the County to be held liable, Plaintiffs must show that the constitutional violation was caused as a result of a County-made custom or policy. *Monell v. New York Dept. Of Social Services*, 436 U.S. 658 (1978).  According to *Garner v. Memphis Police Dep't*, "to satisfy the *Monell* requirements a plaintiff must 'identify the

policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't,* 8 F. 3d 358, 364 (6th Cir. 1993), quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

Defendants also cite to *Oklahoma v. Tuttle* which states that acts by lower level officials are not enough to infer the existence of a municipal policy. *Oklahoma v. Tuttle,* 471 U.S. 808 (1985).  Defendants claim that based on *Monell* and *Tuttle*, the County will not be liable for the acts of Defendants Ivey and Harrison unless it was a specific County-made policy which caused the constitutional violation.

Although Plaintiffs state that they "do not seek to impose liability under respondeat superior" (Doc. 44, p5), it appears otherwise from the allegations in the second amended complaint.  Plaintiffs argue that Defendants' *Monell* arguments are premature because discovery has not been made. They also state that they did infer that it was a County policy which resulted in Mikinah's death.  Plaintiffs state in the second amended complaint, "HCJFS had no information detailing HCJFS's or its agents or employees' compliance with statutory reporting requirements whereby she could understand how her son, Michael Smith III, had received his injuries nor had they investigated these injuries prior to the death of Makinah." (Doc. 38, ¶29).  Furthermore, the Second Amended complaint specifically alleges that "Defendants' wrongful conduct was the result of policies, practices and customs of Hamilton county, and its Officials and the Hamilton County Department of Job and Family Services to not properly report child abuse, to not properly investigate allegations of abuse, to not properly monitor and investigate foster parents under their purview, to not properly train foster parents under their authority and to not properly protect

15

Plaintiff minor children from harm." (Doc. 38, ¶33, see also ¶35). Plaintiffs allege that these failures led to Makinah's death and Michael's injuries.

Taking the complaint as true, as is required at this state of the litigation, Plaintiffs have sufficiently plead a claim against the County.

However, although Plaintiffs raise allegations against "Hamilton County" in its second amended complaint, it failed to list the county in the caption. Plaintiffs will be given leave of Court to amend their complaint again to properly add the Hamilton County Board of County Commissioners. The Court does not find that this amendment will prejudice Defendants as the county prosecutor's office would be representing both the Board of County Commissioners and HCJFS. Furthermore, the party liable for any damages, if any were awarded, would not change.

### E.     State Law Claims

Defendants also argue that they are immune from suit because they are a political subdivision and thus protected by O.R.C. § 2744. Although the Defendants meet the criteria for a political subdivision as defined in Chapter 2744.01(C)(2)(m), they are not automatically entitled to immunity. Generally, per O.R.C. § 2744.02(A), a political subdivision is not liable for torts caused by the acts or omissions of the political subdivision or its employees in connection with a governmental or proprietary function. The statute then goes on to state five exceptions to this general rule which are not applicable to this case. Thus, although the facts of this case are extremely troubling and the ability of HCJFS to hide behind this statute is particularly alarming, the statute none the less provides immunity to the County and HCJFS on the state law claims. However, O.R.C. §2744.03 explains the

16

defenses or immunities of a political subdivision employee. The statute states in (6)(b) that, "the employee is immune from liability unless...the employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Plaintiffs have alleged recklessness, and given the standard of construing the complaint in a light most favorable to the Plaintiffs, the individual Defendants are not entitled to immunity as to state law claims.

### F.      Punitive Damages

Punitive damages will not be discarded at this time.  As set forth above, taking the complaint as true, Plaintiffs have sufficient plead allegations to assert a claim for punitive damages.

### V.      Conclusion

The Motion to Dismiss of Defendant Suzanne Burke (Doc. 27 and 39) is hereby DENIED. The Motion for Judgment on the Pleadings of Defendant Hamilton County, Hamilton County Department of Job and Family Services, Rick Roberts, Judy Harrison and Laticia Ivey (Doc. 30 and 40) is hereby GRANTED as to the State law claims against the County and HCJFS but is otherwise DENIED.  Plaintiffs are granted leave to amend their complaint to correctly name the Board of County Commissioners as a Defendant.

**IT IS SO ORDERED**.

s/Michael R. Barrett
Michael R. Barrett, Judge
United States District Court